# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

STARLA HEARD o/b/o S.T.R.,  :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.  :

Case No. 3:11-cv-456

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits.[1] The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

As an initial matter, the Court notes that Plaintiff has brought this action *pro se.* As such, the Court holds Plaintiff's pleadings to less stringent standards than formal pleadings drafted by lawyers, and the Court will liberally construe those pleadings as well as Plaintiff's arguments. Cf. *Williams v. CSX Transportation Co., Inc.* 643 F.3d 502, 510 (6th Cir, 2011), citing *Federal Exp. Corp. v, Holowecki,* 552 U.S. 389, 402 (2008); see also, *Haines v. Kerner*, 404 U.S. 519,

---

[1] Plaintiff Starla Heard brought this action on behalf of her minor child, S.T.R. However, for ease of reference, the Court will refer to the minor child S.T.R. as Plaintiff.

1

520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

A child is disabled under the Act if he or she has a medically determinable impairment that results in "marked and severe functional limitations" which meets the 12-month duration

requirement of the Act. 42 U.S.C. §1382(a)(3)(C)(i). In determining whether a child's impairments result in marked and severe functional limitations, the regulations prescribe a 3-step sequential evaluation. 20 C.F.R. §416.924(b)-(d). The regulations require the Commissioner to inquire whether the child is engaging in substantial gainful activity. *Id.* If the child is engaging is substantial gainful activity, the child is not disabled and the Commissioner is not required to review the claim further. *Id.* Second, the Commissioner must determine whether the child has a "severe" impairment. *Id.* A "severe" impairment is one that is more than a slight abnormality and causes more than minimal functional limitation. *Id.* If the child does not have a "severe" impairment, the child is not disabled. *Id.* Lastly, the agency must determine if the child has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id.* If his impairments meet, medically equal, or functionally equal a listed impairment, the child is disabled. *Id.*

If a child's impairment or combination of impairments does not meet or medically equal a listed impairment, the regulations prescribe four methods of determining whether a child's impairment is functionally equivalent to a listed impairment. These include whether: (1) a child's impairment results in specific limitations (such as walking or talking) that are the same limitations described in a listed impairment; (2) a child has an episodic impairment that produces disabling functional limitations that are the same as those of a listed impairment with similar episodic criteria; (3) a child's impairment(s) require treatment that itself results in functional limitations that are the same as those of a listed impairment; and (4) a child's impairment(s) result in extreme limitation of function in one broad area of functioning or marked limitation of function in two broad areas. *See,* 20 C.F.R. §416.926a(b)(1)-(4).

Plaintiff filed an application for SSI on February 4, 2009, alleging disability since October 23, 2002, due to a respiratory impairment and allergies. PageID 164-66; 188. The Commissioner denied Plaintiff's application initially and on reconsideration. PageID 97; 98. Administrative Law Judge Carol Bowen held a hearing and a supplemental hearing following which she determined that Plaintiff is not disabled. PageID 59-71; 72-95; 42-57. The Appeals Council denied Plaintiff's request for review, PageID 35-38, and Judge Bowen's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Bowen found that she was born on November 16, 1998, and was a school-age child on the date she filed her application. PageID 45, ¶ 1. Judge Bowen also found that Plaintiff has severe asthma, allergies, contact dermatitis, ADHD, oppositional defiant disorder, anxiety disorder NOS, and depressive disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* ¶¶ 3, 4. Judge Bowen then found that with respect to the six functional equivalence domains, Plaintiff has less than marked limitations in acquiring and using information, in attending and completing tasks, in interacting and relating with others, in moving about and manipulating objects, and in health and physical well-being, and no limitation in the ability to care for herself. PageID 52. Judge Bowen concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 53, ¶ 6.

The record contains a NICHQ Vanderbilt Assessment Scale report that Plaintiff's fourth grade math/science teacher completed on December 12, 2008. PageID 168-73. In that report, Plaintiff's teacher noted that Plaintiff very often was easily distracted by extraneous stimuli, often did not seem to listen when spoken to directly, and that she only occasionally or never

displayed other distracting behavior. *Id.* Plaintiff's teacher also reported that Plaintiff had somewhat of a problem following written directions, but that her other classroom behavioral performances were excellent to above average to average and her academic performance in mathematics was average. *Id.*

Plaintiff's school records reveal that in April, 2008, Plaintiff's score on the Ohio Achievement Test for reading was 399 and for math was 436 and that Plaintiff was in regular classes. PageID 220-21.

Additional school records reveal as follows:

(1) During the 2005-2006 and 2006-2007 school years when Plaintiff was in the first and second grades, her academic performance ranged between satisfactory and very good and that her teachers noted through those years that Plaintiff was helpful, sometimes had a problem showing respect and listening, needed to work on her talking in class, and that she was promoted to the second and third grades respectively. PageID 248-255.

(2) During the 2007-2008 school year when Plaintiff was in the third grade, she earned final grades ranging from A- to C-, her teacher reported during the year that Plaintiff was very capable and had a lot of potential, and that she was promoted to the fourth grade. *Id.*

(3) During the 2008-2009 school year when Plaintiff was in the fourth grade, she earned final grades ranging from A to C, her teacher noted during the year that Plaintiff was inattentive and off task at times, and that she was promoted to the fifth grade. *Id.*

(4) During the 2009-2010 school year when Plaintiff was in the fifth grade, she earned final grades ranging from A to C-, her teacher noted during the year that she needed

to continue to work on increasing the amount of focus that she gave to learning and dedicating less focus to social areas, she had satisfactory work habits, at the end of the school year she was on target for grade-level, and that she was promoted to the sixth grade. *Id.*

On February 19, 2009, Plaintiff's fourth grade teacher reported that Plaintiff's reading level was 3.4 and her math level was 4.4, that she had obvious problems with providing organized oral explanations and adequate descriptions, expressing ideas in written form, recalling and applying previously learned material, and applying problem-solving skills in class discussions, and either no or slight problems with other classroom activities. PageID 210-17. Plaintiff's teacher also reported that Plaintiff had asthma but received no treatment for it during school hours. *Id.*

The record contains office notes from treating physician Dr. Turner dated March, 2001, through January, 2009. PageID 288-303. Those notes reveal that Plaintiff underwent a bilateral myringotomy and insertion of tubes which Dr. Turner performed in March, 2001. *Id.* Those records also reveal that over time, Dr. Turner treated Plaintiff for allergic rhinitis and hypertrophic adenoids and that Plaintiff's condition improved with medications. *Id.*

The record contains Plaintiff's treatment notes from Dermatologists of Southwest Ohio dated May 11, 2007, to August 23, 2008. PageID 268-87. Those records reveal that Plaintiff received treatment at that health care facility for alopecia areata and that her condition improved with the use of topical medication. *Id.*

Plaintiff consulted with allergist Dr. Parker in November, 2007, who reported that Plaintiff had a history of eczema, nasal congestion, runny nose, and sneezing with occasional eye and chest symptoms which occur throughout the year with no obvious seasonal pattern, and that

due to the reported symptoms she had missed several days of school but had not required hospitalization or emergency room visits. PageID 305-15. Dr. Parker also reported that Plaintiff had moderately swollen nasal mucosa but no other findings, skin testing was positive to grass, trees, and mold, moderately positive to dust mite, and equivocal to other major airborne and food allergens. *Id.* Dr. Parker identified Plaintiff's diagnoses as persistent asthma, allergic rhinitis, and eczema and he prescribed medications. *Id.* On November 13, 2008, Plaintiff's respiratory function study revealed mild obstruction and on July 11, 2008, November 8, 2008, and January 8, 2009, Plaintiff's respiratory function studies were normal. *Id.* Plaintiff continued to receive treatment from Dr. Parker through at least February, 2011. PageID 391-419. On October 9, 2009, Dr. Parker reported that Plaintiff's asthma had been fairly well-controlled with an aggressive regimen of medications, she required an emergency room visit in July, and that her nasal mucosa was moderately to severely swollen. *Id.* Dr. Parker also reported that Plaintiff's lungs were clear, her pulmonary function testing revealed no evidence of current airway obstruction, and that she would begin allergy shots. *Id.*

The record contains a copy of Plaintiff's treatment notes from Pediatric Associates of Dayton dated November, 2004, through February, 2011. PageID 320-44; 364-90. Those notes reveal Plaintiff received treatment at that facility for various medical conditions including contact dermatitis, cellulitis/abscess of the leg, asthma, laryngopharyngitis, sinusitis, otitis media, viral infection, foreign body in the ear, constipation, rhinitis, developmental delays, dysuria, attention deficit disorder without hyperactivity, and vaginitis. *Id.* Plaintiff was referred for mental health treatment in September, 2010, at which time her diagnoses were identified as attention-deficit/hyperactivity disorder, combined type, oppositional defiant disorder, anxiety disorder NOS, and depressive disorder NOS. *Id.* Plaintiff attended individual therapy through

March, 2011. *Id.* Plaintiff also received allergy shots at the Pediatrics Associates of Dayton facility. *Id.*

Reviewing physician Dr. Vasquez and reviewing psychologist Dr. Tishler reported in May, 2009, that Plaintiff's medical records indicated that she was doing well, her alopecia was being treated, her pulmonary studies were normal, she did not require an individual education plan at school, there had been no psychological testing performed, and that according to her teacher, Plaintiff had mild difficulty in acquiring information. PageID 346-51. Dr. Vasquez and Dr. Tishler opined that Plaintiff did not have a severe impairment, that she had less than a marked impairment in acquiring and using information, and that she had no limitations attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. *Id.*

Plaintiff was treated in the emergency room on July 27, 2009, after reportedly experiencing an episode of wheezing at home. PageID 354-56. The emergency room physician essentially reported that Plaintiff's physical exam was normal and he identified Plaintiff's diagnosis as reactive airway disease exacerbation by history. *Id.* Plaintiff was treated and released. *Id.*

In October and November, 2009, reviewing physician Dr. Haque and reviewing psychologist Dr. Finnerty reported that Plaintiff had an impairment or combination of impairments that was severe but that did not meet or functionally equal the Listings. PageID 357-63. Those experts also reported that Plaintiff had mild difficulty in acquiring information, had normal physical examinations, did not require ongoing emergency room treatment for exacerbations of her reactive airway disease, and that the allegations were not fully credible. *Id.*

Plaintiff received treatment in the emergency room on September 16, 2012, for strep throat and in February, 2011, for complaints of a rash on her thigh. PageID 403-10. Plaintiff was treated and released on both occasions. *Id.*

The record contains Plaintiff's treatment notes dated February 15, to June 13, 2011, from Dermatology of Southwest Ohio where Dr. Palacio treated Plaintiff for acne and atopic dermatitis. PageID 422-24.

In her *pro se* Statement of Errors, Plaintiff essentially argues that she should be permitted present evidence to the Court in person to convince it that she is entitled to benefits. (Doc. 9). Plaintiff does not make any specific arguments with respect to the Commissioner's decision other than to allege "errors were made." PageID 426.

First, as noted above, the judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review and the Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. It is not the Court's function to essentially re-decide the question of whether Plaintiff is disabled. The Court may not consider evidence that was not before the Commissioner. See *Bass v. McMahon,* 499 F.3d 506, 512-13 (6th Cir. 2007), *citing, Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

The Court turns to the question of whether the Commissioner's decision is supported by substantial evidence on the record as a whole.

A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). In other words, it is the claimant's specific burden is to prove that she was disabled. The claimant has the burden of establishing disability by providing medical and other evidence that the Commissioner
9

can use to reach conclusions about the claimant's medical impairments. See 20 C.F.R. § 416.912. The claimant must, of course, provide medical evidence from acceptable medical sources. *Id.* at § 416.913.

Judge Bowen did not err by concluding that Plaintiff has less than marked limitations in five domains of functioning and no limitation in a sixth domain

First, the Court notes that none of Plaintiff's treating physicians have opined that she is disabled by any of her impairments or by a combination of those impairments. In addition, the reviewing physicians of record have opined that Plaintiff has, at worst, an impairment or combination of impairments that is severe, but which does not meet or functionally equal the Listings. Further, the medical evidence of record from Plaintiff's treating sources reveals that Plaintiff responded well to the various treatment modalities. For example, Dr. Turner noted that over time, Plaintiff's condition improved with medications and Plaintiff's dermatological records reveal that her alopecia areata improved with the use of topical medication. Additionally, Plaintiff's treating pulmonologist Dr. Parker reported over time that Plaintiff's asthma was controlled and that with a one-time exception of a test that revealed mild obstruction, her pulmonary function tests were normal. Finally, Plaintiff's medical records from Pediatric Associates of Dayton reveal that Plaintiff was essentially seen for acute medical conditions which responded to treatment.

With respect to any alleged mental and/or behavioral impairment, the Court notes Plaintiff's school records establish that generally Plaintiff's academic performance was acceptable and that she earned grades ranging from A to C-. While Plaintiff's fourth grade teacher reported on February 19, 2009, that Plaintiff had problems with providing organized oral explanations and adequate descriptions, expressing ideas in written form, recalling and applying

previously learned material and applying problem-solving skills in class discussion, that report is inconsistent with Plaintiff's fourth-grade report cards which reveal grades ranging from A to C and the teacher's report that Plaintiff was "inattentive and off task *some of the time.*"(emphasis supplied). Plaintiff was always promoted to the next grade level and none of her report cards reflect that Plaintiff had any limitations in any of the six domains of functioning. In addition, Plaintiff's treating pediatricians never documented any limitations in any of the six domains of functioning. Finally, the reviewing mental health experts opined that Plaintiff has, at worst, less than a marked impairment in acquiring and using information, and no limitations in the other domains.

Under these facts, the Commissioner did not err by finding that Plaintiff is not disabled.

This Court will now address the fact that Plaintiff was unrepresented at the administrative hearings.

When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1051 (6th Cir. 1983). Although a court scrutinizes with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal. *Holden v. Califano,* 641 F.2d 405, 408 (6th Cir. 1981). Rather, the court examines each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing. *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir. 1986).

At the first administrative hearing, held on February 25, 2011, Judge Bowen engaged in a lengthy discussion with Plaintiff's mother about the right to be represented. PageID 61-71.

Plaintiff's mother described her efforts at obtaining representation and Judge Bowen reviewed with Plaintiff's mother the various kinds of representation that might be available to her. *Id.* Judge Bowen also explained the differences in procedures and standards between the hearing level and the Appeals Council level of the administrative process, and offered to postpone the hearing so that Plaintiff could obtain representation. *Id.* After Plaintiff's mother advised Judge Bowen she would like to postpone the hearing, Judge Bowen obtained information from Plaintiff's mother about Plaintiff's recent medical treatment as well as her school background so that she (Judge Bowen) could update the record. *Id.* Indeed, Judge Bowen subsequently updated the record. See, *e.g,* PageID 248-66 (school records obtained Mar. 4, 2011).

At the second administrative hearing Plaintiff's mother advised Judge Bowen that she had not obtained representation and that she had signed a waiver of representation. PageID 74; see also, PageID 160. Judge Bowen noted that she had updated the record and that Plaintiff's mother had brought additional information to the hearing which was made a part of the record. PageID 75. Judge Bowen then took testimony from both Plaintiff and Plaintiff's mother. PageID 76-95.

This Court has carefully reviewed the entire record in this matter and particularly the transcripts of the hearings before Judge Bowen. Based on that review, the Court concludes that Judge Bowen satisfied her special duty to this unrepresented Plaintiff to ensure that a full and fair administrative record was developed.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

*LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

July 25, 2012.                                                                  s/ **Michael R. Merz**
                                                                                United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).